RICHARD ROE, cas. ejector, and JOHN LEE and SAMPSON PROWELL, tenants in possession, plaintiffs in error, vs. JOHN DOE, ex dem., JOHN CATO's orphans, DANIEL CATO, ELIJAH JOHNSON, et al., defendant in error.

Where a purchaser of land, *with notice* of a prior unrecorded deed, sells to one, *without notice*, the old deed being still unrecorded, the title of the latter will be protected.—BENNING J. dissenting.

Ejectment, from Fannin county. Tried before Judge RICE, at October Term, 1858.

This was an action of ejectment brought by John Doe, upon the several demises of John Cato's orphans, Daniel Cato, Elijah Johnson, and the executor of Abel N. Dugger, deceased, against Richard Roe, casual ejector, and John Lee and Sampson Prowell, tenants in possession, for the recovery of lot of land number fifty-seven, (57,) in the ninth district of

originally Cherokee now Fannin county, containing one hundred and sixty acres.

The defendant pleaded the general issue and the statute of limitations.

Upon the trial on the appeal, the plaintiff offered and read in evidence, a grant from the State to John Cato's orphans, of Walker's district, Houston county, for the land in controversy—grant, dated May 14th, 1847. Next, a deed of conveyance from Daniel Cato to Elijah Johnson, dated 25th June, 1849. *This deed was not recorded,* and its execution was proved by one of the subscribing witnesses. Plaintiff next read such portions of the depositions of witnesses, taken by commission, as were descriptive of the said Daniel Cato, and went to identify him as the drawer of the lot in question. He proved the value of the rent, and that Lee and Prowell were in possession, under Samuel Rutherford, at the commencement of the suit, and closed.

Defendants moved for a nonsuit, on the ground, that plaintiff had failed to prove that Daniel Cato was the drawer or grantee of the land. The Court refused the motion, and defendants excepted.

Defendants then went into their defence, and introduced a deed for the lot in dispute, from Daniel Cato to George W. Slappey, dated 19th June, 1854, and recorded 3d July, 1854; then a deed from Slappey to Samuel Rutherford, under whom defendants hold, this deed dated 23d June, 1854, and recorded 3d July, 1854. Defendants next offered in evidence, a deed from Elijah Johnson to John Dugger, Junior, and John Dugger, Senior, executors of Abel N. Dugger, late of Autauga county, North Carolina, dated 13th March, 1850, and recorded 26th March, 1851. This deed was produced by plaintiff, in response to a notice from defendants.

Plaintiff offered testimony in rebuttal; and a great deal of evidence was introduced, which it is unnecessary to set out here.

The great—the main question in the case was, as to the

effect of Slappey's notice of Johnson's unrecorded deed from Cato, upon the title of Rutherford, Slappey's grantee, who bought without notice of said deed, although his grantor, Slappey, had notice.

The Court below charged the jury, that when two deeds are executed by the same person, conveying the same premises to different persons, the one recorded within twelve months from the execution thereof, (if the feoffee have no notice of a prior unrecorded deed at the time of the execution of the deed to him,) shall have priority; but if, at the time of the execution of the deed, he has notice of the prior unrecorded deed, then his deed shall not have priority, but the elder deed shall prevail.

The Court further charged the jury, that if Slappey, at the time he received the deed from Cato, had notice of the deed. from Cato to Elijah Johnson, then no title passed to him, Slappey, and he gained nothing by having his deed recorded in time, and the title was still in Johnson, or the Duggers, if Johnson has conveyed to them. Also, that it was not incumbent on plaintiff to prove that Samuel Rutherford had notice of Cato's deed to Johnson.

Defendants requested the Court to charge the jury, that if Rutherford bought of Slappey without notice of the deed to Johnson, he was not affected by the notice to Slappey. This the Court refused to charge.

Defendants also requested the Court to charge the jury, that as John Dugger, Senior and John Dugger, Junior, had failed to file any evidence of their being the executors of Abel N. Dugger, deceased, that plaintiff had no right to recover on the demise from them; which charge the Court declined to give.

The Court further charged the jury, that the terms "John Cato's orphans," in the grant, implied that John Cato was dead, and that it was for the jury to determine, from the evidence, what person or persons were meant and intended by the words "John Cato's orphans."

To all of which charge and refusals to charge, defendants excepted.

The jury found for the plaintiff, and defendants tender their bill of exceptions, assigning as error the aforesaid rulings, charges and refusals to charge, excepted to.

WALKER; UNDERWOOD, for plaintiff in error.

J. R. BROWN; and MILNER, *contra.*

*By the Court.*—LUMPKIN J. delivering the opinion.

The only question we deem it our duty to consider and decide in this case is this: Concede that George W. Slappey bought of Daniel Cato, the orphan of John Cato, deceased, *with notice* of the prior unrecorded deed, made by Daniel Cato to Elijah Johnson, and sold to Samuel Rutherford, who had *no notice* of the conveyance to Johnson—is Rutherford protected in his purchase?

As between Johnson and Slappey, the two immediate grantees of Cato, the Act of 1837 declares, that Johnson's title shall prevail. That Act settles nothing beyond this; and such was the general decisions of our State Courts before that Act was passed. A departure from this doctrine led to the passage of this Act, as I am induced to believe from information derived from one of the old Circuit Judges. And so far as we are advised, the adjudications were equally well settled and uniform upon the other point, namely: That if A. buys land of B., and takes a deed which he fails to record in time, and B. subsequently sells the same land to C., who records his deed in time, *with notice,* and C. conveys to D. *without notice* of A's deed, and both C. and D's deeds are registered within the twelve months, that D. has priority over A.

Without citing any other authority, which is scattered broadcast over the books of reports, we rest our judgment upon the case of *Trueluck and others against Peoples and oth-*

*ers*, 3 *Ga. Rep.* 446.    That case, it is true, was not decided under the Act of 1837.    But, as we have already said, the point we are discussing is not provided for by that Act.    But *Trueluck against Peoples* was referred to and affirmed in *Herndon and others vs. Kimball and others*, 7 *Ga. Rep.* 432. And this latter decision was upon a deed made in 1839.

The facts of the case in *3d Georgia*, were identical with the facts in this case.    The learned Judge, (WARNER,) in delivering the opinion of the Court, says: "It is a *settled rule*, that if one affected *with notice*, conveys to one *without notice*, the latter shall be protected equally as if no notice ever existed.    So, where one *without notice*, conveys to one *with notice*, the purchaser *with notice* will be protected; for otherwise, a *bona fide* purchaser might be deprived of the benefit of selling his property for its full value."    And this rule is sustained by innumerable precedents.

And it occurs to me, that it is founded in reason.    If the second grantee, from the same vendor who buys, acquires the priority over the old unrecorded deed, why should not the vendee of the second grantee, who purchases without notice, be equally protected ?    If the *laches* of the first grantee, in not having his deed recorded in time, is made the reason for giving precedence to the second purchaser, *without notice*, does it not operate with equal force in favor of the innocent purchaser *without notice*, from the second grantee *with notice ?*    It is by the same *laches* that this second purchaser is enabled to perpetrate a fraud upon his innocent vendee.

It is said that he may resort to his warranty, and thus cause the loss to fall upon the right person.    The same argument would apply as between the two original grantees from the same vendor.    And yet the Legislature has not deemed that a satisfactory reason; and hence passed the Act of 1837.    A warranty is not always given; and the warrantor may be irresponsible.    Moreover, it is not disputed but that there are a class of cases, where this principle does ob-

Lee et al. vs. Cato et al.

tain.   Why should it prevail in any case, if the foregoing re-
ply is satisfactory ?   Neither law nor equity ever looks be-
yond an innocent purchaser, but spreads its broad ægis over
him.

Again, it is contended that this doctrine is illogical.   For,
say counsel, if the first purchaser *with notice* takes nothing,
how can he convey a title to a *bona fide* vendee ?   When A.
sells in fee to B., has he any thing left ?   And yet it is yielded,
for the statute so declares, that if B. fails to record in time,
A. may subsequently sell the same land to C.   The right, in
both cases, depends upon the law which may regulate the
rights of the parties, as to justice shall seem proper.

But I forbear to elaborate any further.   Such being the
settled rule in this State, and out of it, prior to the passage of
the Act of 1837, (which, so far from discountenancing, ra-
ther favors the doctrine, by inference at least, for which we
are contending;) and of this Court since the *unanimous* de-
cision of this Court in *Trueluck's* case, in 1847; and the
General Assembly, with full knowledge of the old law, not
having seen fit to disturb it, we think it best to adhere to the
practice, however ingenious and plausible the argument sub-
mitted to the contrary, until changed by statute to operate
prospectively.   To overrule all past adjudications, whether
ill or well founded, whether with or without sufficient au-
thority, and establish a contrary rule, would be to overthrow
a vast number of land titles in this State.   No Court ought
to do this.

Judgment reversed.


McDonald J. concurred.

Benning J. dissenting.

Cato was the drawer of the land.   He made a deed for it
to Johnson; afterwards, he made a second deed for it to
Slappey, but giving Slappey notice of the first deed.   Slap-

Lee et al. vs. Cato et al.

pey, afterwards, made a deed for the land, to Rutherford who, it is to be presumed, *pro hac vice*, received the deed, without notice of the deed to Johnson.    The deed to Johnson, was not recorded within twelve months from its date; the other two deeds were recorded within twelve months from their respective dates.

These were the facts.    And the question is, which had the title, Johnson or Rutherford?

The decision of the Court below was, that Johnson had the title; and that decision was, I think, right.

If Rutherford had the title, he must have acquired it from Slappey.    But, he could not have acquired it from Slappey. That is forbidden by a rule of the common law, and also, by a statute; and there is nothing to gainsay the rule, or the statute.

What rule?    The rule, that he who has no title himself, can convey none, to another.    Slappey had no title himself; he purchased from Cato, a person who had no title, he having parted with the title to Johnson, and purchased with notice of that fact.    Therefore Slappey had no title himself; and he having no title, the common law rule says, that he could convey none to Rutherford.

What statute?    The Registry Act of 1837.    A part of the fourth section of that Act is as follows: " In all cases where two or more deeds shall, hereafter, be executed by the same person, or persons, the one recorded within twelve months from the time of execution, (if the feoffee have no notice of a prior deed unrecorded at the time of the execution to him or her,) shall have preference."    These words say, by implication, that if this feoffee *do* have notice of a prior deed unrecorded, at the time of the execution of the deed to him or her, the *prior deed*, and not his, should have the preference. That the words say this, by implication, I suppose, I may assume.

Slappey, at the time of the execution of the deed to him, had notice of the prior unrecorded deed to Johnson.    There-

fore, by the implication in the statute, that deed had the preference over his. But to let his deed convey the title to Rutherford, would be to give his deed a preference over that deed. It is true, then, that the statute forbids, that Rutherford should have acquired title from Slappey.

Is there anything to gainsay this double inhibition; an inhibition of both the common law and a statute. It was argued, that there were two things to do so; the one, the *spirit* of this same statute; the other, a *decision* of this Court.

As to the former, I say first, that, if the letter of a statute is plain, we are not at liberty to leave the letter, for what, we may fancy to be the spirit, unless sticking to the letter would lead to some very bad consequences. This, I dare say, will be conceded. Here, the letter, though, to be implied, is plain. That the statute means to say, by implication, that the first deed shall have the preference over the second, if the taker of the second, have notice of the first, none will deny. And sticking to this, as the letter, would not lead to any very bad consequences. The effect of doing so, would be, to give to Johnson, the land; to Rutherford, damages for the breach of Slappey's warranty to him; for it is to be presumed, that he has a warranty from Slappey. That is to say, the effect would be, to put the loss on Slappey, the very person who ought to bear it, for it is he that is the guilty party; it is he that bought with notice of the prior deed. Sticking to the letter then, would, by putting the loss on the right party, lead to good, instead of, to evil, consequences; not sticking to it, but following the supposed spirit, and giving the land to Rutherford, would be, to transfer the loss from his warrantor, Slappey, a guilty party, to Johnson, an innocent party. This being so, it follows, from the principle assumed, that we ought not to depart from the letter of the Act, to follow the supposed spirit of it.

Secondly: It is by no means clear, that the case of Rutherford, is within even the spirit of the Act. What is the

Lee et al. vs. Cato et al.

spirit of the Act? Is it, that he who buys by the record, shall be protected by the record? So broad as that, it can not be, I say. There are some cases in which, he who buys by the record, will yet, not be protected by the record; as the case in which, he takes a second deed, without notice of the first, and before the first has been recorded, but takes it be fore the time for recording, the first, has expired, and, subse quently, but within what remains of that time, the first is recorded; secondly, the case in which, the deed the record of which, he follows, is, a forgery; thirdly, the case in which, the deed, the record of which, he follows, is one that was never delivered. In none of these three cases, does the pur- chaser acquire any thing, although, in each, he follows the indication of the record, as to where the title is. And we may well argue, that cases analogous to any of these ought to keep company with these, and share their fate. The case in hand, is analogous to the last two of these. It is a case in which, one of the deeds on record was a *void* deed ; the deed from Cato to Slappey. That deed was void, because Cato had previously conveyed all his interest in the land, to John- son, and Slappey, when he took that deed, knew that Cato had.

The two cases referred to, are also cases in which, a deed on record is, void. True, in them, the deed is void for a dif- ferent reason ; in the one, for being a forgery; in the other, for never having been delivered. But what of that? It is the effect that is material, and not the cause, and the effect is the same in each of the three cases, namely, that the deed in each is void.

Then there is analogy between the case in hand, and these two cases of the forgery and the non-delivery of the recorded deed. It is also true, that it must be admitted that there is analogy between the case in hand, and a case which is cer- tainly within the Act. Suppose Slappey had bought from Cato, without notice of Cato's previous sale to Johnson, and had recorded his deed in twelve months from its date. In that case, Slappey would have got the title over Johnson, and

yet it would be true, that he would have got it, from a man who had no title himself—Cato having previously parted with all his title to Johnson. The Act would, by its express words, cover this case. The question, then, is, which would be the more conformable to the spirit of the Act, that the case in hand should be made to keep company with this case, or that it should be made to keep company with the other two cases. That is a question to which, there are two sides. And if that is so, then, the case ought to be made to keep company with those two cases—seeing, that to make it do so, would be to follow both the letter of the Act, and the rule of the common law. What these are, we have seen.

I say, then, that it is true, that this is a case in which we are not at liberty, to leave the letter of the Act, to follow what we may imagine to be the spirit of it, because, first it is plain what the letter is; and, secondly, is not plain, but that the spirit goes with the letter.

But is there not a decision adverse to this conclusion—the decision in *Trueluck vs. Peoples*, 3 *Kelly*.

I say no, and, for two reasons:

First, that decision was not made on this Act of 1837, but, on the previous registry Acts—and not one of those Acts contain a provision similar to the provision in this Act of 1837. The Act of 1767, contains a different—an opposite provision to that and one expressed in the strongest language. The provision in this Act of 1837, is, that if the second purchaser have notice of the previous purchase, that purchase shall have the preference over his, although the deed in that previous purchase, may not have been recorded within the prescribed time, and his deed may have been recorded within the prescribed time. The provision in the Act of 1767, prescribes a time within which it says that all deeds must be recorded ; it then uses these words : " In failure of which, all such as are lawfully and regularly registered as aforesaid, shall be deemed, taken, and construed, to be prior, and shall take place, and be recoverable, before any and every deed,

conveyance, or mortgage, which has not been lawfully registered as above." *Prince*, 158. This is a provision, on the very letter of which, *Trueluck and Peoples* can well stand. In that case, the first deed was not recorded in the prescribed time—the second was, and when that is so, the statute says that the second shall have the preference, and it does not say that this preference shall depend on whether the second purchaser has, or has not notice of the first purchase. Altogether different is the letter of the Act of 1837.

Again, the decision in *Trueluck vs. Peoples*, is put on the equity principle, that a purchaser of the legal title, without notice of the equitable title from a purchaser with notice of that title, gets the whole title, both legal and equitable. This principle, I do not deny; but, I may remark, that if it is now an established one, its establishment has been, not without dissent and opposition. But, in my opinion, the case was not one in which the principle could apply. The cases in which that principle applies, are cases in which, the purchaser acquires *the legal title*. The rule is founded on another equity rule; namely, the rule that where the equities are equal, the legal title shall prevail. The equity of a purchaser without notice, must be equal to the equity of any other claimant whatever, for he parts with his money, and does so, without fault in himself. He has the legal title; and, thus, he stands one point ahead of every other claimant whatever. Consequently, he must be able to prevail over all competitors. The case in which, this principle applies, happens when A. holding property in trust for B. sells it to C., with notice of the trust, and C. sells it to D. without notice of the trust. Here C. acquired the legal title, although, he purchased with notice of the trust; consequently he can, and does transmit that title to D., who thereby becomes the holder of the legal title, without notice of the trust. But, in the *Trueluck case*, the purchaser without notice, *never acquired the legal title*. Purchasing from one who purchased with notice of the trust, he purchased from one who had

no title of any sort to convey ; and therefore, he could not have acquired the legal title. Of course, this is said on the supposition that the registry Acts are to be laid out of the question, and that the case is to be considered as one governed by the common law, and the principles of equity. That is the way in which, it seems to have been considered by the Court deciding it. The *Trueluck case*, then, was, I say, put on a principle that does not apply to such a case, as it was. And the point, whether that principle did or did not, apply to the case, was not, as far as appears, before the Court. It seems to have been assumed, on all hands, as a matter of course, that the principle did apply to the case. The attention of the Court not having been drawn to the point, the decision would be worth little as a precedent on the point, even if it were true, that the decision were not on a different statute from that, involved in the present case.

For these reasons, I dissent from the judgment of the Court.